UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BELINDA LITTLE, ) | |
| ) | |
| Plaintiff. ) | |
| ) | |
| vs. ) | No. 1:11-CV-185-AGF-SPM |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

# REPORT AND RECOMMENDATION
# OF UNITED STATES MAGISTRATE JUDGE

This is an action under 42 U.S.C. § 405(g) for judicial review of the final decision of Defendant Michael J. Astrue, the Commissioner of Social Security, denying the application of Plaintiff Belinda Little for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 405(g) *et seq.* This matter was referred to the undersigned United States Magistrate Judge for review and a recommended disposition pursuant to 28 U.S.C. § 636(b). The undersigned recommends that the decision of the Commissioner be affirmed.

## I.
## PROCEDURAL HISTORY

On July 23, 2009, Plaintiff Belinda Little filed applications for Social Security Benefits under Title II and Title XVI, alleging disability because of chronic obstructive pulmonary disease (COPD), anxiety, "anti-social," hepatitis C, schizophrenia, and emphysema, with a November 20, 2007 onset date. (Tr. 24, 93, 140-47). The Social Security Administration denied

her applications initially on November 5, 2009. (Tr. 24, 93-97). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on January 1, 2010, and a hearing was held before the ALJ on January 24, 2011. (Tr. 39-88, 98-99). The ALJ issued a decision on April 27, 2011, finding that Plaintiff was not disabled. (Tr. 24-34). The Appeals Council denied Plaintiff's request for review on August 25, 2011. (Tr. 1-5). Thus, the decision of the ALJ stands as the final decision of the Commissioner.

In her appeal of the Commissioner's decision, Plaintiff contends that the ALJ's findings regarding her mental impairments were irreconcilably inconsistent and that the ALJ erred by posing a hypothetical question to the vocational expert (VE) that did not adequately describe her mental impairments.

## II.
### FACTUAL BACKGROUND

**A. BACKGROUND**

On January 24, 2011, Plaintiff Belinda Jean Little testified at a hearing before ALJ Joseph L. Heimann. (Tr. 39-70, 72-78, 80-81, 86-87). Plaintiff was born October 19, 1964. (Tr. 45). She is single and lives with her cousin, his wife and their two children. (Tr. 44-45). She has an eleventh grade education and no vocational training or military service. (Tr. 45, 47). Plaintiff has worked in the past as a forklift operator, a trailer light assembler, and a machine fed welder. (Tr. 79).

Until November 20, 2007, Plaintiff had been working in a warehouse, driving a forklift. The forklift caused pain in her back and neck, as did bending over to lift boxes and walking through the warehouse. In her last six months of work, she missed a week straight of work because she "couldn't get up and go." (Tr. 47). She testified that she was laid off around

November 20, 2007, when the need for her job was eliminated. Plaintiff collected unemployment for about a year and stated that, during that time, she felt as good as she had when she was working and could have worked. (Tr. 49-50). Plaintiff testified that she filed for disability in July 2009 because, at that point, she had hepatitis that was "taking [her] system completely down" and she thought that she could not work anymore. (Tr. 50-51).[1]

Plaintiff testified that her hepatitis C had caused all of her other illnesses to progress. She stated that as of 2010, she had completed treatment for hepatitis C but still suffered from several other problems: a rundown immune system; fatigue and stamina issues from the hepatitis C treatment; pain in her neck and back; restrictions on lifting and twisting; emphysema; muscle cramps and spasms in her back, shoulder, and arms; and a broken leg. (Tr. 52-59).

Plaintiff also testified that she suffers from anxiety and depression, that she does not like being around large groups of people, and that she does not go out a lot in crowds. She stated that if she is at home and feels anxious, she will not come out of the bedroom, because she gets snappy and she does not want to hurt someone's feelings. (Tr. 59-61). She also stated that there are days when she does not feel like getting out of bed or taking care of herself. (Tr. 69). However, Plaintiff indicated in her function report that she gets along with authority figures "OK" and that she has never been fired or laid off from a job because of problems getting along with other people. (Tr. 181). She has been seeing doctors for her mental health and now sees one doctor about once a year. She testified that she takes Seroquel[2] and Celexa[3] and that she

---

[1] At this point in the hearing, Plaintiff's attorney indicated that Plaintiff was willing to amend the onset date; the ALJ later stated that he "intend[ed] to use the projected filing date of July of 2009 as kind of [his] starting point." (Tr. 51, 85.)
[2] Seroquel is a brand name for quetiapine and is used to treat schizophrenia, bipolar disorder, and depression. http://www.nlm.nih.gov/medlineplus/druginfo/meds/a698019.html

"think[s] they help." (Tr. 60). She stated that her depression and anxiety are not better or worse than they have been in the last couple of years. (Tr. 68-69).

Plaintiff testified that she has had a problem with alcohol and illegal drugs in the past but has not had anything to drink about a year and a half and has not used illegal drugs in over five years. (Tr. 63-64).

Plaintiff testified that she visits with her family and sometimes goes to church (Tr. 63, 65).

### B. MEDICAL TREATMENT

Plaintiff has a long history of substance abuse and has been abusing alcohol and methamphetamines since the age of thirteen. (Tr. 236, 238). Plaintiff was admitted to an inpatient mental health center due to her drug problems from February 18, 1998 through March 6, 1998. (Tr. 244-248). On discharge, her diagnoses were methamphetamine abuse and substance induced mood disorder, depression. (Tr. 246).

On March 23, 2009, Dr. Juan Carlos Salazar at the Family Counseling Center diagnosed Plaintiff with "depressive disorder, NOS"; "rule out major depressive disorder, recurrent, moderate to severe, with questionable psychotic features"; and "history of polysubstance abuse, mainly alcohol and methamphetamines."[4] She was assessed as having a Global Assessment of

---

[3] Celexa is a brand name for citalopram and is used to treat depression. http://www.nlm.nih.gov/medlineplus/druginfo/meds/a699001.html

[4] Plaintiff testified the reason that there are very few medical records prior to March 2009 is that she did not have insurance at that time. (Tr. 48.)

Functioning (GAF) score of 50.[5] In his mental status examination, he noted that her mood was reportedly depressed; her affect was somewhat restricted; she was, for the most part, coherent and logical with goal directed thought processes; she denied suicidal or homicidal ideation; she denied hallucinations; she had occasional perceptual disturbances; her attitude was cooperative; she was fairly groomed; and her interactions were somewhat masculine. He noted that she had abused alcohol and methamphetamines since the age of thirteen but that she seemed ready to sober up and stabilize her life. He further noted that she had had at least two psychiatric hospitalizations in 1997 related to depression while abusing substances, and that she had undergone several inpatient rehabilitation treatments. In addition, she had been incarcerated multiple times and has had at least 60 DWIs. (237).[6] Dr. Salazar prescribed citalopram (Celexa) and Trazodone.[7] (Tr. 236-38).

On June 3, 2009, Dr. Salazar stated that Plaintiff had "improved irritability and depression" and that she was still complaining of sleeping problems. In her mental status examination, her orientation was alert, her general appearance was well groomed, her attitude was cooperative, her behavior and speech were normal, her mood was neutral, her affect was full and appropriate, her thought processes were goal directed, her thought content was

---

[5] The Global Assessment of Functioning Scale (GAF) is a psychological assessment tool wherein an examiner is to "[c]onsider psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness"; it does "not include impairment in functioning due to physical (or environmental) limitations." *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV)*, 32 (4th ed. 1994). A GAF score between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *DSM-IV* 32.

[6] At the hearing before the ALJ, Plaintiff stated that she had actually had only five DWIs. (Tr. 63.)

[7] Trazodone is a serotonin modulator and is used to treat depression. http://www.nlm.nih.gov/medlineplus/druginfo/meds/a681038.html

unremarkable, her insight and judgment were fair, and she had no hallucinations. Dr. Salazar noted that Plaintiff was taking Celexa, Trazodone, and Ativan;[8] he discontinued her Trazodone and prescribed Seroquel. (Tr. 251).

On June 15, 2009, Plaintiff saw Dr. Stephen Welton, M.D. for her chronic active hepatitis C. She reported that, with the Seroquel, she slept well. He noted that she appeared anxious and tremulous and that she was a "fair historian," though she did look to her brother for some of her answers. Dr. Welton noted that Plaintiff has schizophrenia and stated, "I think we may have to put her back on Dr. Salazar since the psychiatric problems are so significant with medications, especially if she is a 1A." (Tr. 274-75).

On July 15, 2009, Plaintiff saw Dr. Welton again for treatment for hepatitis C, and Dr. Welton noted that he would write to Plaintiff's psychiatrist for his opinion on whether she was sufficiently stable to undergo therapy. (Tr. 272). Dr. Welton wrote to Dr. Salazar, and Dr. Welton's August 12, 2009 notes indicate that Dr. Salazar thought that Plaintiff was sufficiently psychologically stable to start therapy. (Tr. 271, 273).

On July 23, 2009, Plaintiff returned to Dr. Salazar. He noted that Plaintiff reported that she was sleeping fairly well, felt much less depressed, and was in a better emotional way than she had felt in years. In his mental status exam notes, he described her mood as euthymic,[9] her affect as congruent to her stated mood, and her cognition as grossly intact; the exam was otherwise unremarkable and consistent with his June 3, 2009 assessments. Her diagnosis was

---

[8] Ativan is a brand name for lorazepam and is used to treat anxiety. http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682053.html

[9] Euthymia means "1. Joyfulness; mental peach and tranquility. 2. Moderation of mood, not manic or depressed." *Stedman's Medical Dictionary* (28th ed.) 678.

major depressive disorder. (Tr. 249). Her GAF score was 63.[10] Dr. Salazar stated that Plaintiff would continue a regimen of Seroquel, Celexa, and Ativan. (Tr. 250).

On September 24, 2009, Plaintiff again saw Dr. Salazar. She reported that she had felt a little more depressed after starting her hepatitis C treatment but not severely so. Her mental status examination results and GAF were unchanged from her July 23, 2009 examination. (Tr. 372-73).

On November 4, 2009, Dr. James Morgan, Ph.D., completed a Psychiatric Review Technique form for Plaintiff. He found that Plaintiff had medically determinable impairments of schizophrenia, major depressive disorder, and a history of polysubstance abuse but found that the impairments were not severe. (Tr. 285-96). He found that Plaintiff had mild restriction of activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace, and no repeated episodes of decompensation. (Tr. 293). He opined that the schizophrenia diagnosis noted within her primary care provider's records was not really supported by her history. He also noted that she had an intact mental status examination with improved mental status since she had become sober and maintained her sobriety. He concluded that her current mental functional capacity was not significantly compromised. (Tr. 295).

On January 14, 2010, Plaintiff returned to Dr. Salazar, and he noted that she reported feeling more depressed and hearing mumbling occasionally. In his mental status examination, he

---

[10] A GAF score of 61-70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." *DSM-IV* 32.

noted that her mood was depressed. Her GAF was assessed as 50. Her results were otherwise unremarkable and consistent with prior assessments. (Tr. 301-302).

On March 25, 2010, Plaintiff saw Dr. Salazar, and he noted that she had finished her hepatitis C treatment and was "feeling less depressed." Her mood was noted to be euthymic, and her GAF was assessed as 50. Her results were otherwise unremarkable and consistent with prior assessments. (Tr. 299-300).

On May 27, 2010, Plaintiff saw Dr. Salazar, and she reported that she was feeling depressed two days a week, that she ruminated frequently about having her family members go to prison, and that she was feeling lonely. He stated that her Celexa dose would be increased. Her mood was noted to be euthymic, and her GAF was 50. Her results were otherwise unremarkable and consistent with prior assessments. (Tr. 304-05).

On June 28, 2010, Plaintiff saw Dr. Salazar, and she reported that changes made at her last visit had been helpful for her to feel less depressed and that she was actually doing better now. Her mood was stated to be euthymic, and her current GAF was 60.[11] Her results were otherwise unremarkable and consistent with prior assessments. (Tr. 306-07).

On July 21, 2010, Plaintiff saw Dr. Krishnappa A. Prasad, M.D., for shoulder pain, and Dr. Prasad's notes state that she had normal orientation, association, judgment, motoric behavior, thought process, attitude, and pain behavior, with no psychotic thoughts. Her mood, family relationships, and social relationships were described as "better," but her physical and overall functioning were described as "not good." (Tr. 339-40).

---

[11] A GAF of 51-60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *DSM-IV* 32.

On November 15, 2010, Plaintiff saw Ravdeep Khanuja, M.D., a psychiatrist. He stated that the patient "reports that she is doing pretty good on current medication," "reports that her mood is more stable," "denies any auditory or visual hallucinations or any specific delusions," "denies any pervasive feelings of worthlessness or hopelessness," and "denies any definite hypomanic or manic symptoms." She reported that she sometimes feels someone may be talking about her but that she is able to check her thoughts and knows that it is not true. Dr. Khanuja stated that Plaintiff was cooperative, had fair eye contact, was fairly groomed, and had normal psychomotor activity. Her judgment was partial to fair and her cognition was grossly intact. He diagnosed major depressive disorder with psychosis and "methamphetamine and alcohol abuse rule out dependence." Her GAF at the time of assessment was 65-70. She stated that she had been clean from methamphetamines for four to five years and very infrequently drinks a few beers. Dr. Khanuja noted that she was to continue Seroquel and Celexa and consider a reduction in her Ativan dosage. (Tr. 362-63).

### C. Vocational Evidence

Dr. Darrell Taylor testified as a vocational expert at the hearing before the ALJ. (Tr. 71-85). The ALJ asked the VE the following question:

> Assume a younger individual with the past work experience you have identified and limited education and further assume that they are limited to light work and assume that their posturals are at occasional. Further assume that they should avoid exposure to irritants, even at the moderate level, and also avoid exposure to even moderate levels of vibration. And, finally assume that they would be limited to a job with only minor interaction with the public. Would such a person be able to do any of the past relevant work?

(Tr. 79-80). The VE responded that such a person would be able to do Plaintiff's past work as a trailer light assembler and a machine fed welder. (Tr. 80). He stated that there would be

approximately 1000 such welder positions and 3000 such assembler positions in the state of Missouri. (Tr. 81-82).

The ALJ then asked the VE a series of additional hypothetical questions involving additional physical limitations. (Tr. 83). Finally, he asked whether any jobs would remain if any of the hypothetical individuals he described missed three or more days a month because of physical or mental health reasons; and the VE stated no jobs would be available. (Tr. 83-84).

## III.
### DECISION OF THE ALJ

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2012, and that Plaintiff had not engaged in substantial gainful activity since November 20, 2007, the alleged onset date of her disability. (Tr. 26). The ALJ found that Plaintiff had the following severe impairments: hepatitis C, COPD (chronic obstructive pulmonary disease), degenerative disc disease of the spine, and major depressive disorder with psychosis. He found that Plaintiff's history of polysubstance abuse was not severe, as she no longer abused alcohol and there were no significant limitations of functioning as a result of her past alcohol abuse. (Tr. 26). He found that Plaintiff did not have an impairment or combination of impairments that meets or equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 27).

The ALJ found that the claimant had the RFC to perform the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), and that she had the ability to lift and carry 10 pounds frequently and 20 pounds occasionally, with the ability to stand and walk six hours in an eight hour work day and sit the remaining two hours. He found that she would be unable to climb, balance, stop, kneel, crouch, or crawl more than occasionally and must avoid exposure to

moderate levels of vibration and pulmonary irritants. Finally, he found that she would be limited to only occasional interaction with the public. (Tr. 28).

With respect to Plaintiff's mental impairments, the ALJ noted that her treatment records showed that treatment had been effective and that, "with the exception of some limitation to working more than occasionally with the general public, she has no severe limitations in her mental functioning." The ALJ next found, relying on the VE's testimony, that Plaintiff was capable of performing her past relevant work as a trailer assembler and machine welder. The ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from November 20, 2007 through the date of his decision, and that she was not disabled under the Social Security Act. (Tr. 33).

## IV.
### GENERAL LEGAL PRINCIPLES

The court's role in reviewing the Commissioner's decision is to determine whether the decision "'complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole.'" *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008)). "Substantial evidence is 'less than preponderance, but enough that a reasonable mind might accept it as adequate to support a conclusion.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012) (quoting *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009)). In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Id.* However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good

reasons and substantial evidence.'" *Id.* (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision.'" *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

A five-step regulatory framework is used to determine whether an individual claimant qualifies for disability benefits. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the ALJ determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the ALJ determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe

impairment, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c); *McCoy*, 648 F.3d at 611. At Step Three, the ALJ evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the ALJ proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the ALJ must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. §§ 404.1520(e), 416.920(e). At Step Four, the ALJ determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his past relevant work, he is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.* At Step Five, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012).

# V.
## DISCUSSION

In her appeal, Plaintiff argues (1) that the ALJ's findings with respect to her mental impairments were inconsistent, and (2) that the hypothetical question the ALJ directed to the VE did not reasonably incorporate all of Plaintiff's mental impairments, specifically with regard to her anxiety and her interactions with employers, supervisors, and coworkers. The undersigned will address each argument in turn.

### A. INCONSISTENCY IN THE ALJ'S FINDINGS

Plaintiff first argues that the ALJ's findings with respect to her mental limitations are irreconcilably inconsistent. She notes that the ALJ found at Step Two of his analysis that Plaintiff had a "severe impairment" of major depressive disorder. (Tr. 26). She then claims that finding was inconsistent with his opinion regarding her RFC, in which he stated, "I find that with the exception of some limitation to working more than occasionally with the general public, she has no severe limitations in mental functioning." (Tr. 33). Plaintiff also argues that the ALJ's finding that she had a severe mental impairment was inconsistent with his question to the VE, in which he described an individual who "would be limited to a job with only minor interaction with the public."

The Eighth Circuit rejected a nearly identical argument in *Lacroix v. Barnhart*, 465 F.3d 881 (8th Cir. 2006). In *LaCroix*, the ALJ had found at Step Two that the plaintiff had a severe impairment of major depressive disorder with anxiety, noting that the plaintiff's impairment significantly limited her ability to carry out simple instructions and respond appropriately to supervisors and coworkers. *Id.* at 884, 888 n.3. However, in his RFC assessment at Step Four, the ALJ did not include those limitations, instead finding only that the plaintiff was precluded

from jobs requiring her to deal with the general public. *Id.* at 885. On appeal, the plaintiff argued that the ALJ's severe impairment findings were inconsistent with his RFC assessment. *Id.* at 888 n.3. The Eighth Circuit rejected that argument, noting that "[e]ach step in the disability determination entails a separate analysis and legal standard." *Id.* (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)).

Here, as in *LaCroix*, there is no inconsistency between the ALJ's finding at Step Two that Plaintiff has a severe impairment of major depressive disorder and his later RFC finding that contains only a limitation on the claimant's ability to interact with the general public. Thus, Plaintiff's first argument is without merit.

### B. Hypothetical Question To The VE

Plaintiff's second argument is that the hypothetical question the ALJ directed to the VE did not reasonably incorporate all of Plaintiff's mental impairments, specifically with regard to her ability to interact with employers, supervisors, and coworkers. Plaintiff cites no evidence in the record in support of this argument, nor does Plaintiff challenge any of the reasons the ALJ gave for his findings regarding Plaintiff's impairments.

A hypothetical question to a VE "must capture the concrete consequences of the claimant's deficiencies." *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001). The question "'needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole.'" *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) (quoting *Lacroix*, 465 F.3d at 889); *see also Howe v. Astrue*, 499 F.3d 835, 842 (8th Cir. 2007) ("A hypothetical . . . need only include impairments that are supported by the record and that the ALJ accepts as

valid."). In formulating the hypothetical, "the ALJ may exclude any alleged impairments that [the ALJ] has properly rejected as untrue or unsubstantiated." *Hunt,* 250 F.3d at 625.

Here, the ALJ's hypothetical question to the VE encompassed all of the mental limitations in the ALJ's RFC, in which the ALJ stated that Plaintiff "would be limited to only occasional interaction with the general public." (Tr. 28). Thus, the issue is whether the ALJ's mental RFC assessment was supported by substantial evidence. A claimant's RFC is "the most a claimant can do despite [the claimant's] limitations." *Moore*, 572 F.3d at 523 (citing 20 C.F.R. § 404.1545(a)(1)). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)).

The undersigned finds that the ALJ's assessment of Plaintiff's RFC, and thus his hypothetical to the VE, was supported by substantial evidence. In assessing Plaintiff's RFC, the ALJ noted that Plaintiff alleged that she had depression and anxiety and had sought treatment for those conditions. (Tr. 33). However, as the ALJ noted, Plaintiff's treatment records indicated that medications were largely effective in treating her anxiety and depression. (Tr. 29-30, 33). At various points after Plaintiff began taking medications for her mental impairments in March 2009, she reported that her irritability and depression were improved, that she was in a better emotional way than she had been in years, that she felt much less depressed, that medication changes had been helpful for her to feel less depressed, that she was more stable, and that she was doing "pretty good" on her medication. (Tr. 236-38, 249-51, 306, 362). In addition, her GAF score, which was 50 in March 2009 and ranged from 50 to 63 at various points in 2009 and 2010, had improved to 65-70 as of November 2010. (Tr. 236, 250, 299, 301, 304, 306, 363,

372). Moreover, in her testimony before the ALJ, Plaintiff stated that she thought her medications helped. (Tr. 60). When an impairment is controlled by medication or treatment, it cannot be considered disabling. *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (finding the ALJ's RFC determination supported by substantial evidence where the ALJ concluded that medication controlled the claimant's condition); *Brown v. Astrue*, 611 F.3d 941, 955 (8th Cir. 2010) ("'If an impairment can be controlled by treatment or medication, it cannot be considered disabling.'") (quoting *Brace v. Astrue*, 578 F.3d 882, 885 (8th Cir. 2009)).

The ALJ's findings are also supported by the fact that Plaintiff's treatment records consistently describe her behavior and speech as normal, her attitude as cooperative, her thought process as goal directed, her thought content as unremarkable, her insight and judgment as fair, and her cognition as grossly intact. (Tr. 238, 249, 251, 299, 301, 304, 306, 339, 362-63, 372).

In addition, Plaintiff's statements that she gets along with authority figures "OK" and that she has never been fired or laid off from a job because of problems getting along with other people are consistent with a lack of limitation on her inability to interact with coworkers and supervisors. (Tr. 181).

Notably, Plaintiff does not challenge any of the reasons the ALJ offered in support of his findings regarding her mental limitations, nor does she specify what evidence supports her contention that his findings were inadequate. Some of Plaintiff's testimony might be consistent with additional limitations on her ability to interact with others, such as her testimony that she sometimes feels anxious at home and will not come out of her bedroom and her statement that there are days when she does not feel like getting out of bed or taking care of herself. (Tr. 59-61, 69). However, to the extent that those statements conflict with the ALJ's RFC finding, the ALJ

found them not credible. (Tr. 32).[12] Courts "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence," and courts "do not reweigh the evidence presented to the ALJ." *Gonzales*, 465 F.3d at 894. As discussed above, the ALJ's assessment of Plaintiff's RFC was supported by substantial evidence, and the undersigned will not reweigh the evidence that was presented to the ALJ.

Because the ALJ's RFC assessment was supported by substantial evidence and the ALJ's hypothetical question included all of the limitations identified in the RFC, the hypothetical question was proper, and the VE's answer constituted substantial evidence supporting the ALJ's denial of benefits. *See Martise*, 641 F.3d at 927 (holding that because the ALJ's RFC findings were supported by substantial evidence, and the ALJ's hypothetical question included all of the limitations identified in the RFC, the hypothetical question was proper and the VE's answer constituted substantial evidence supporting the ALJ's decision).

---

[12] The Plaintiff does not challenge the ALJ's credibility determination. If she were to do so, the undersigned would find the ALJ's determination supported by substantial evidence. The ALJ's analysis of Plaintiff's complaints was consistent with the framework set forth in *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), and described in 20 C.F.R. §§ 404.1529 and 416.929. He cited 20 C.F.R. §§ 404.1529 and 416.929, he reviewed the evidence as a whole, and he discussed the credibility factors most relevant to this case, including Plaintiff's testimony, Plaintiff's daily activities, the effectiveness of her medications, the side effects of her medications, and the objective medical findings related to her complaints. (Tr. 28-33.) *See Buckner v. Astrue*, 646 F.3d 549, 558-59 (8th Cir. 2011) (finding the ALJ's credibility determination proper where, although the ALJ did not cite the *Polaski* factors, he had clearly considered four of these factors); *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (finding the ALJ's credibility determination proper where the ALJ did not cite *Polaski* but cited 20 C.F.R. §§ 404.1529 and 416.929 and discussed several of the *Polaski* factors).

# VI.
## CONCLUSION

For the reasons set forth above, the undersigned finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY RECOMMENDED** that the final decision of the Commissioner denying social security benefits be **AFFIRMED**.

The parties are advised that they have fourteen (14) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. *See Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).

/s/Shirley Padmore Mensah
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 9th day of November, 2012.